## TOBE A. LONG *v*. THE STATE.

1. CHANGE OF VENUE — PRACTICE IN THIS COURT. — Unless the record discloses the *data* upon which the court below refused a change of venue, this court cannot say that error was committed.
2. INFORMATION. — See the opinion for an information *held* sufficient for buying cattle without taking a bill of sale.
3. EVIDENCE. — See the opinion and statement of facts for evidence *held* insufficient to support a verdict of conviction for such offence.

APPEAL from the County Court of Medina.   Tried below before the Hon. J. PAUL, County Judge.

The defendant was charged, by information, with the violation of sect. 39 of "An act to encourage stock-raising" (Gen. Laws 1876, p. 303), in that he purchased sixty-three head of cattle without taking a bill of sale therefor. Being tried, a verdict of conviction was rendered against him, and a fine of $1,260 adjudged, in accordance with the finding of the jury.

Grimsinger, for the State, testified that he knew that F. X. Haberle gathered about sixty-odd head of cattle on the Chicon, in Medina County, and sold them to defendant. Was present when Haberle sold the cattle to defendant. Witness saw the two talking together, but knows nothing of the contract regarding the delivery of the cattle. When the third bunch was delivered, defendant told Haberle to bring him cattle whenever he wanted to; that he always had some money at home, and plenty of it in town. Haberle took defendant no cattle after delivering the third bunch, as he was then arrested. The first bunch of cattle was bought by defendant at Bend's pen, and the number was from eleven to fourteen. The second bunch was bought by defendant back of Thompson's field, and no bill of sale was made by Haberle at this sale. The money was paid for this bunch in an old open field. Haberle and defendant then went up to Thompson's house, and witness cannot say that a bill of sale was not given, up there. There were other cattle delivered about a mile from this point, at which there was no inspector or other officer present, and witness saw no bill of sale given there. About a week elapsed between the delivery of the first and second bunches, and about ten days between the second and third. About thirty-four cattle were sold to defendant in the third bunch.

On reëxamination, witness stated that defendant did not ask Haberle if the cattle belonged to him. Defendant was buying cattle from the Bends and other people at the same time.

John Ihnken testified that he filled the office of inspector

of hides and animals, for Medina County. Witness went to defendant's house, in Atascosa County, and found a number of cattle there. Asked the defendant if he had purchased any cattle from Haberle. Defendant answered that he had, and witness then asked him to show him either a bill of sale or a list of the brands. Defendant pulled a list of brands out of his pocket, which was signed in Haberle's name, and which defendant told him were brands of cattle purchased from Haberle. Witness then told defendant that he was inspector of hides and animals, for Medina County, and defendant asked him if there was any trouble. Witness answered that he did not know, but that Haberle would have to pay well for some of the cattle. Witness copied the list of brands, which was signed by Haberle. It was not authenticated by any officer. Defendant told witness that all he (witness) could claim was his inspection-fee. Witness did not claim it, nor did defendant offer him a fee.

Witness examined the stock. Each head had a fresh brand, but the old ranch-brand was not changed. The ear-marks had been recently changed to a crop and under half-crop in each ear. The list of brands copied represents fifty head of cattle, and the witness does not know what has become of the remaining thirteen head. He took the cattle from defendant's place, and kept them in his own pen until they were claimed and taken by owners. Had never inspected the cattle.

For the defence, it was proved that one of the places where some of the cattle were bought and delivered was about three hundred yards beyond the Medina County line, in Frio County.

*J. M. Eckford, J. D. Morrison,* and *N. P. Jackson,* for the appellant.

*Thomas Ball,* Assistant Attorney-General, for the State.

ECTOR, P. J. The information in this case is drawn under sect. 39 of "An act to encourage stock-raising, and for the protection of stock-raisers," approved August 23, 1876. See Gen. Laws 1876, p. 303. This court has heretofore held that the law under which the information was drawn is constitutional.

The information itself is a good one. We cannot say that the court erred in overruling the defendant's application for a change of venue. The record fails to disclose the testimony in support of and against defendant's affidavit for the change, supported by the affidavits of two other citizens of Medina County. The county attorney contested the application for a change of venue. Unless we had all the *data* upon which the court below acted, we cannot say that the court committed an error in its rulings. The information charges that defendant " did, on the 30th day of January, 1879, purchase of Frank X. Haberle sixty-three head of cattle, without then and there obtaining a bill of sale thereof from the owner or owners, in writing, or from his or her authorized agent, properly signed, and acknowledged before some officer authorized to authenticate instruments for record in this State."

The evidence shows that the defendant purchased the cattle mentioned in the information, as charged therein, and that they were purchased on three different days.

The fifth subdivision of the charge of the court is as follows : " If, however, you believe from the evidence that the cattle mentioned in the information were purchased in the county of Medina, or within four hundred yards of the county line, in violation of the requirements as set out in the second and third subdivisions of the charge, at different times or days intervening between them, then you are instructed that each of said purchases is, in law, a distinct, substantive offence, and defendant can be convicted of one only ; and, in making up your verdict, you will ascertain from the evidence how many of such cattle, if any, were

so purchased at any one time, two years before the 30th day of January, 1879; and, if you find him guilty, you will assess his fine in any sum not less than twenty dollars, nor more than one hundred dollars, for each animal so purchased.''

The jury returned the following verdict: '' We, the jury, find the defendant guilty as charged, and assess his fine at twelve hundred and sixty dollars, for the illegal purchase of sixty-three head of cattle.'' The verdict is not supported by the evidence. The statement of facts shows that thirty-four was the largest number of cattle purchased by the defendant, as charged, on any one day. For this error in the verdict, the judgment must be reversed.

We deem it unnecessary to notice the other errors assigned. The judgment of the court below is reversed, and the cause remanded.

*Reversed and remanded.*